**DEAN WITTER REYNOLDS INC., Petitioner,**

v.

**Bruce and Carolyn PROUSE, Michael and Catherine Kettenring and Robert R. and Mary Jane Durkin, Respondents.**

**No. 93 CIV. 1853(WCC).**

United States District Court, S.D. New York.

Sept. 14, 1993.

---

Morgan, Lewis & Bockius, New York City, for petitioner; Stuart M. Sarnoff, John F.X. Peloso, Robert B. Kaplan and Joseph M. McLaughlin, of counsel.

Beigel & Sandler, New York City, and Chicago, IL, for respondents; Lawrence R. Gelber, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Dean Witter Reynolds Inc. ("Dean Witter"), petitions this Court for a declaratory judgment stating that it is not required to arbitrate Michael and Catherine Kettenring's ("the Kettenrings") claims against the firm before the American Arbitration Association ("AAA"). The Kettenrings' cross-petition seeks to compel Dean Witter to arbitrate before the AAA in New York City or, in the alternative, before the National Association of Securities Dealers Inc. ("NASD") in New York City. Dean Witter's petition is granted and the Kettenrings' cross-petition is denied.

## BACKGROUND

On November 29, 1983, the Kettenrings entered into a customer agreement governing their account with Dean Witter which contained the following arbitration provision:

Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect.

On April 5, 1987, the Kettenrings entered into a second customer agreement covering the same account [1] which contained the following arbitration clause:

Arbitration of Controversies. I agree and you agree by carrying any account in which I have an interest that all controversies between me and you or your agents, representatives or employees arising out of or concerning any such account, any transactions between us or for such account, or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date below, shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc. or the New York Stock Exchange, or any other arbitration facility provided by any other exchange of which you are a member and in which a transaction giving rise to a claim took place, as I may elect.

Respondents, Bruce and Carolyn Prouse ("the Prouses") and Robert and Mary Jane Durkin ("the Durkins") have not signed a Dean Witter customer agreement containing an arbitration provision.

In late 1985, respondents purchased investment vehicles in the Capital Housing Partners–CLXI ("CHP–CLXI") through Dean Witter. Alleged misrepresentations and omissions made by Dean Witter in connection with these investments form the basis of respondents' underlying claim. In late January, 1993, respondents filed a Demand for Arbitration and Statement of Claim with the AAA in Washington, D.C. in which Dean Witter, the petitioner in this action, was

1. The Kettenrings' account number 308–14632– 045 appears at the top of both agreements.

named among the respondents.[2] Dean Witter filed this petition seeking both a stay of respondents' arbitration before the AAA in Washington, D.C. and a declaratory judgment and injunction precluding the Prouses and the Durkins from arbitrating against Dean Witter before the AAA in Washington, D.C. and precluding the Kettenrings from arbitrating against Dean Witter before the AAA in any locale.[3]

This initial dispute has been largely resolved by an agreement between the parties. All respondents have agreed not to pursue their claims against Dean Witter before the AAA in Washington, D.C.. The Prouses and the Durkins will refile their claim against Dean Witter, if at all, with the AAA in New York City, and Dean Witter does not object to this forum.[4] The present dispute is centered on the Kettenrings' cross-petition to compel Dean Witter to arbitrate before the AAA in New York City or, in the alternative, the NASD in New York City. Dean Witter opposes the Kettenrings' cross-petition and seeks only declaratory relief stating that it is not obligated to arbitrate the Kettenrings' claims before the AAA.

### DISCUSSION

Dean Witter is not required to arbitrate the Kettenrings' claims before the AAA because the AAA is not among the arbitral fora listed in the applicable customer agreement. Further, the Kettenrings are not entitled to

**2.** Respondents' Statement of Claim cited two bases of jurisdiction before the AAA in the District of Columbia. First, respondents pointed to the CHP–CLXI partnership agreement which provides:

> Any dispute, controversy or claim arising out of or in connection with or relating to this Agreement ... shall, upon the request of a party involved, be submitted to and settled by arbitration in the District of Columbia pursuant to the rules then in effect of the [AAA] ...

Second, respondents evoked Article VIII, § 2(c) of the American Stock Exchange Constitution ("the AMEX window") which provides:

> [I]f any of the parties to a controversy [involving an AMEX member firm] is a customer, the customer may elect to arbitrate before the [AAA] in New York City, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange.

Am.Stock Exch. Guide (CCH) ¶ 9063.

an order compelling Dean Witter to arbitrate before the NASD in New York City because Dean Witter has expressed a willingness to proceed before that forum without any compulsion from the Court. Consequently, Dean Witter's petition is granted and the Kettenrings' cross-petition is denied.

### I. Dean Witter Is Not Required To Arbitrate The Kettenrings' Claims Before The AAA.

■ Under the Federal Arbitration Act we may direct parties to arbitrate only in a manner provided for in their arbitration agreement. 9 U.S.C. § 4; *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474–75, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989). We may not rewrite the parties' agreement and compel arbitration of their dispute in a forum which is not one of those enumerated in the arbitration agreement's forum selection clause.

> 'When Congress enacted the Arbitration Act making arbitration agreements enforceable, it surely did not intend that the parties be able to disregard selected contractual obligations willy-nilly in order to choose an arbitral forum more convenient or more suited to a party's particular needs.'

*Georgiadis*, 903 F.2d at 113 (quoting *Roney & Co. v. Goren*, 875 F.2d 1218 (6th Cir.1989)).

**3.** In its original petition, Dean Witter contended that it was not bound by the arbitration clause in the CHP–CLXI partnership agreement because it was not a party thereto, and it argued that the AMEX window allows arbitration only before the AAA in New York City. Dean Witter also asserted that only the Prouses and the Durkins, not the Kettenrings, may arbitrate pursuant to the AMEX window.

**4.** The parties have agreed that, pursuant to the AMEX window, the Prouses and the Durkins may arbitrate before the AAA in New York City. The Kettenrings do not contend that the AMEX window is available to them nor could they since the Second Circuit has held that the provisions of the AMEX window are trumped by a specific arbitration agreement between the parties. *Paine-Webber, Inc. v. Rutherford*, 903 F.2d 106, 107–08 (2d Cir.1990); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109, 112–13 (2d Cir.1990).

■ The arbitration clause in the Kettenrings' 1983 customer agreement includes the AAA as an appropriate arbitral forum while the AAA is not among arbitral fora set out in the 1987 agreement. Both agreements apply to the same account, and the 1987 agreement states that its arbitration clause applies to all disputes between the parties arising from account transactions whether entered into "prior, on or subsequent to" the effective date of the agreement. Thus the parties have expressed their intention that the arbitration provision in the 1987 agreement supersede that of the 1983 agreement. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*, 804 F.Supp. 1512, 1514 (M.D.Fla. 1992) (dispute pertaining to transactions made prior to execution of arbitration agreement was submitted to arbitration pursuant to agreement which applied to transactions "whether entered into prior, on, or subsequent to" the date of the agreement).

The Kettenrings contend that since the underlying transactions at issue occurred prior to the execution of the 1987 customer agreement, the 1983 customer agreement controls the present dispute. However, the timing of the underlying purchases is of no consequence; courts routinely enforce retroactive arbitration agreements when, as in the case at bar, this is consistent with the parties' intentions. *Clark v. Kidder, Peabody & Co., Inc.*, 636 F.Supp. 195, 197 (S.D.N.Y.1986) (arbitration provision in customer agreement applied to transaction made under prior agreement); *Prestera v. Shearson Lehman Bros., Inc.*, 1986 WL 10095 (D.Mass.1986); *Hamilton v. Dean Witter Reynolds, Inc.*, 1989 WL 89434 (W.D.Pa.1989); *King*, 804 F.Supp. at 1514.

■ Further, the Kettenrings argue that concerns for judicial economy and the specter of inconsistent judgments should incline us towards compelling Dean Witter to arbitrate their claims before the AAA, in New York City.[5] However, the intent of the Federal Arbitration Act is to enforce private arbitration agreements even at the expense of complex and inefficient dispute resolution, and consequently, we lack the power to consolidate respondents' arbitrations before the AAA in New York City absent an agreement among all the parties authorizing us to do so. *United Kingdom v. Boeing Co.*, 998 F.2d 68 (2d Cir.1993); *see Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218–221, 105 S.Ct. 1238, 1241–1242, 84 L.Ed.2d 158 (1985) (enforcing an arbitration agreement despite the prospect of bifurcated and redundant proceedings); *see also Ginsburg v. Faragalli*, 776 F.Supp. 806, 808 (S.D.N.Y.1991) (enforcing agreement to arbitrate despite the prospect that doing so would lead to inefficient maintenance of separate proceedings in different fora); *but see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Noonan*, 1992 WL 196741 (S.D.N.Y.1992).[6] Since arbitration

---

**5.** In addition to the Prouses and the Durkins, counsel for respondents has informed Dean Witter that three other claimants, who are presently before the AAA in Washington, D.C., will exercise their contractual right to arbitrate their claims against Dean Witter before the AAA in New York City.

**6.** *Noonan* is the only case cited by respondents' counsel in support of the Kettenrings' cross-petition. The court in *Noonan* divided the respondents into two groups, the Noonan respondents and the Schiffman respondents. The Noonan respondents had an arbitration agreement with Merrill Lynch which was similar to the Kettenrings' 1987 agreement with Dean Witter. The Schiffman respondents, like the Durkins and the Prouses in the case at bar, had no arbitration agreement with Merrill Lynch and therefore could arbitrate before the AAA in New York City through the AMEX window. The Noonan respondents sought to compel arbitration before the AAA in New York City and thereby to consolidate all respondents' claims in that forum. Since Merrill Lynch had not agreed to arbitrate with the Noonan respondents before the AAA, the court in *Noonan* refused to compel the firm to arbitrate with the Noonan respondents in that forum. To this extent, the reasoning in *Noonan* is consistent with our own.

However, in the event that the Noonan respondents were unsuccessful in their attempt to compel Merrill Lynch to arbitrate before the AAA, the Schiffman respondents expressed a willingness to have their claims consolidated with those of the other respondents before the NASD. The decision is silent as to whether Merrill Lynch agreed to arbitrate with the Schiffman respondents before the NASD. Nonetheless, the *Noonan* court ordered all parties to arbitrate before the NASD in New York City. We differ with the *Noonan* court to the extent that, in an attempt to obtain judicial economy, it ordered Merrill Lynch to arbitrate with the Schiffman respondents in a forum in which it had not agreed to arbitrate.

before the AAA is not contemplated under the controlling agreement, the Kettenrings' petition to compel arbitration before the AAA in New York City is denied.

## II. Dean Witter Should Not Be Compelled To Arbitrate Before The NASD.

■ In the event the Court finds that compelling arbitration before the AAA in New York City is improper, the Kettenrings alternatively petition the Court to compel Dean Witter to arbitrate before the NASD in New York City. Dean Witter concedes that arbitration before the NASD in New York City is proper under the Kettenrings' 1987 customer agreement, and it has expressed a willingness to litigate this dispute in that forum. However, Dean Witter opposes the Kettenrings' petition to the extent it seeks a Court order *compelling* the firm to arbitrate before the NASD.

Dean Witter fears that an order compelling arbitration may jeopardize its eligibility defense before the arbitrator. Section 15 of the NASD Code of Arbitration provides that:

No dispute shall be eligible for submission to arbitration under this Code where six years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statute of limitations *nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.*

(emphasis added).[7] Dean Witter asks that we not compel it to arbitrate before the NASD because such an order may prompt the arbitrator to conclude that the six-year eligibility requirement does not apply to the Kettenrings' claims. Dean Witter argues that the 1987 customer agreement vests it with the procedural protection provided by the arbitral fora specified therein and that an

order by this Court compelling the firm to arbitrate before the NASD may lead to the unjustified forfeiture of one of the protections granted it by the NASD code.

We are precluded from issuing an order compelling Dean Witter to arbitrate before the NASD regardless of the effect that such an order would have in the subsequent arbitration. The Federal Arbitration Act states that:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which save for such agreement, would have jurisdiction ... for an order directing that such arbitration proceed in the manner provided for in such agreement....

9 U.S.C. § 4 (emphasis added). The Kettenrings have not been aggrieved by Dean Witter's refusal to arbitrate before the NASD because Dean Witter has not in fact refused to arbitrate in that forum. Rather it has expressed every willingness to do so. Therefore the Kettenrings are not entitled to an order compelling arbitration before the NASD. *Cf. Waterspring, S.A. v. Trans Marketing Houston Inc.*, 717 F.Supp. 181, 185 (S.D.N.Y.1989) ("since the contract permitted petitioner to proceed with the arbitration without respondent's cooperation, petitioner is not a 'party aggrieved' and 9 U.S.C. § 4 does not apply"); *Aaacon Auto Transport, Inc. v. Barnes*, 603 F.Supp. 1347, 1349 (S.D.N.Y.1985) (order compelling arbitration inappropriate where other party had filed a demand for arbitration albeit in an alternative venue); *Koreska v. Perry–Sherwood Corp.*, 253 F.Supp. 830, 832 (S.D.N.Y.1965) (arbitration can not be compelled when the parties have already submitted to arbitration

---

7. Dean Witter contends that the Kettenrings failed to assert their claim within this six-year period. However, it does not ask the Court to reach this issue but is content to litigate the eligibility requirement before the NASD. Although some circuits have held that the question of whether a claim is eligible for arbitration may be reached by the court, the rule in this circuit is that all limitations defenses, including those of eligibility, are submitted to the arbitrator. *Compare PaineWebber Inc. v. Hofmann*, 984 F.2d

1372, 1378–79 (3d Cir.1993) (court may reach eligibility requirement under NASD § 15) *and Roney and Co. v. Kassab*; 981 F.2d 894, 899 (6th Cir.1992) (court may reach New York Stock Exchange eligibility requirement) *with Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir.1991) ("we state emphatically that *any* limitations defense—whether stemming from the arbitration agreement, arbitration association rule, or state statute—is an issue to be addressed by the arbitrators.").

in accordance with the agreement), *aff'd*, 360 F.2d 212 (2d Cir.1966); *but cf. Noonan*, 1992 WL 196741 (S.D.N.Y.1992).[8]

## CONCLUSION

For the foregoing reasons, Dean Witter's petition for a declaratory judgment stating that it is not required to arbitrate the Kettenrings' claims before the AAA is granted, and the Kettenrings' cross-petition to compel arbitration before the AAA in New York City or, in the alternative, before the NASD in New York City is denied.

**SO ORDERED.**

---

**8.** The Kettenrings argue that, since the court in *Noonan* compelled all the parties to litigate before the NASD, so too should Dean Witter be compelled to arbitrate before the NASD. *See supra* note 6. However in *Noonan*, Merrill Lynch, unlike the petitioner in the case at bar, sought a court order declaring that it was not required to arbitrate respondents' claims before the NASD because the six-year eligibility requirement of section 15 of the NASD code had not been met. The court in *Noonan* may have concluded that Merrill Lynch's petition constituted a refusal to arbitrate before NASD which in turn vested the court with the power to compel arbitration under section 4 of the Federal Arbitration Act. Unlike the petitioner in *Noonan*, Dean Witter has not resisted the Kettenrings' right to arbitrate their claims before the NASD, and absent such opposition this Court may not compel arbitration.